**Donald OLSON, by Ruby Olson, his general conservator, Appellant,**

v.

**ST. JOSEPH'S HOSPITAL, Respondent,**

**F. B. Spieler, M. D., Respondent.**

**No. 49398.**

Supreme Court of Minnesota.

June 29, 1979.

---

2. The trial court apparently overlooked Minn.St. 361.13, which does establish vicarious liability for boat owners.

Rischmiller, Wasche & Knippel and Robert Wm. Rischmiller, Minneapolis, for appellant.

Quinlivan & Williams and Richard R. Quinlivan, St. Cloud, for respondent St. Joseph's Hospital.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Spieler.

Heard before TODD, SCOTT, and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

A jury returned a general verdict of $18,750 for plaintiff, Donald Olson, for "burns" he suffered while he was hospitalized at

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

defendant St. Joseph's Hospital.[1] The trial court granted defendant's motion for a new trial on the ground that it had committed fundamental error by instructing the jury on res ipsa loquitur. Plaintiff appealed and defendant seeks review of the denial of its motion for judgment notwithstanding the verdict. We reverse.

Plaintiff, a 44-year old spastic quadriplegic, is unable to communicate or to care for himself, and lives with his widowed mother, who, as his general conservator, brought this action. On February 17, 1976, plaintiff had a sore throat and a fever and, at his defendant doctor's suggestion, he was taken to defendant hospital.

There is no need to recite the utterly conflicting testimony. It is sufficient to say that plaintiff claimed that when he arrived at the hospital his feet and lower legs were in good condition, and that after discharge on February 25, 1976, he had severe sores, lesions, or "burns" on his feet and lower left leg. The hospital denied any negligence and there was no definitive testimony as to the cause of the sores, lesions, or "burns."

The trial court submitted the matter to the jury and included the following res ipsa loquitur instruction:

"Before you are permitted to make this inference [of negligence], you must find all of the following:

"1. That plaintiff suffered burns to his lower legs while a patient at defendant St. Joseph's Hospital.

"2. That the cause of receiving this injury by defendant is such that it ordinarily would not happen in the absence of someone's negligence.

"3. That the cause of the burns was in the exclusive control of the defendant at the time of the injury, and

"4. That the injury was not due to the conduct of plaintiff or some third person.

1. Plaintiff's attending physician was also named as a party defendant, but his motion to dismiss was granted during the course of the trial. Plaintiff does not appeal his doctor's dismissal.

"If you find that plaintiff has established all of the foregoing, you are permitted, but you are not required, to draw such an inference."

The issues presented are: (1) Did the plaintiff suffer burns to his lower left leg and feet while a patient at defendant hospital? (2) Under the fact situation of this case, was it proper to submit the matter to the jury on res ipsa loquitur?

■ 1. Inherent in the jury's verdict is a finding that plaintiff's sores, lesions, or "burns" were suffered while he was a patient at defendant hospital. Defendant contends that in the absence of expert testimony the evidence does not support a finding of "thermal burns."[2]

In describing the physical appearances of the wounds on plaintiff's feet and leg, the various witnesses used such descriptive words as bed sores, burns, lesions, thermal burns, second and third degree burns, red, pussy, purulent, exposed to the bone, char, charred, red-brown color, crusted, etc.

■ The expert testimony was equivocal with regard to the cause of the necrotic sites. Plaintiff's physician, the dismissed defendant, who was the only medical doctor to testify, said that he took photographs of the lesions a few days after plaintiff's discharge from the hospital because, "Well, I felt that things weren't going right and I thought I should have a record of it." When asked what he meant, he said, "Well, according to the nurses' notes when he was discharged, those wounds were just slightly moist, just discharging. They were not purulent and these at this time [day after discharge] were so they had changed." Later he testified that he did not consider

them burns because there was no charring but admitted that there would be no charring if, for example, they were caused by scalding water.

Thus, this is not a case in which the jury's determination of the cause of plaintiff's injury must fall for lack of expert testimony. See, e.g., *Smith v. Knowles,* 281 N.W.2d 653 (Minn.1979), filed May 18, 1979. In *Larson v. The Belzer Clinic,* 292 Minn. 301, 195 N.W.2d 416 (1972), this court held that the plaintiff in a medical malpractice action may elicit expert opinions from the defendant doctor. The jury here could reasonably infer from the evidence that plaintiff's necrosis resulted from thermal burns.

■ The entire evidence viewed in the light most favorable to the verdict sustains the jury's implicit finding of thermal burns and defendant's motion for judgment non obstante is without merit.[3] See, *Ruskamp v. Ferknes,* 261 N.W.2d 612 (Minn.1978); *Filas v. Daher,* 300 Minn. 137, 218 N.W.2d 467 (1974); *Fisher v. Edberg,* 287 Minn. 105, 176 N.W.2d 897 (1970).

2. The trial court in granting a new trial concluded that, because "the injury may have resulted from a cause that is not chargeable to the doctor or hospital," the doctrine of res ipsa loquitur should not have been applied. In reaching its conclusion, the trial court relied on a number of Minnesota decisions, including *Hoffman v. Naslund,* 274 Minn. 521, 144 N.W.2d 580 (1966); *Miller v. Raaen,* 273 Minn. 109, 139 N.W.2d 877 (1966); *Wallstedt v. Swedish Hospital,* 220 Minn. 274, 19 N.W.2d 426 (1945); and *Collings v. Northwestern Hospital,* 202 Minn. 139, 277 N.W. 910 (1938). In these cases, we affirmed the trial court's decision not to instruct on res ipsa loquitur because,

2. Defendant contends that the court should have instructed the jury that it must find that plaintiff had suffered "thermal burns," not merely "burns," before it could infer defendant's negligence. It is not clear from the record whether or not this objection was made to the trial court. "[W]here no exceptions are taken to instructions to the jury, and the claimed error in such instructions is not assigned as grounds for a new trial, the instructions become the law of the case and may not be challenged for the first time on appeal." *Du-*

*chene v. Wolstan,* 258 N.W.2d 601, 606 (Minn. 1977). Moreover, both the testimony and plaintiff's argument to the jury leave no doubt that plaintiff was only seeking recovery on the basis of having sustained thermal burns. Therefore, the instruction was not confusing.

3. The trial court in granting the motion for a new trial did not rule on defendant's alternative motion for judgment notwithstanding the verdict.

in the language of *Hoffman*, "res ipsa loquitur will not be applied if the occurrence could have happened from causes other than defendant's negligence." 274 Minn. 531, 144 N.W.2d 588.

The rule as stated by these cases directly conflicts with Dean Prosser's clarification of the res ipsa loquitur doctrine in which he wrote:

" * * * The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that he must prove a civil case beyond a reasonable doubt." Prosser, Torts, § 39 (4th ed. 1971).

Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 195 (1949), reads:

"It is still true that where it is entirely clear that there is no basis of experience from which a reasonable man may conclude that negligence is a more probable explanation than any other, the court will hold that res ipsa loquitur does not apply, and that as a matter of law the plaintiff has not sustained his burden of proof. In three cases of this kind, however, the California courts have fallen into the error of saying that the inference of negligence must be so compelling as to exclude all other inferences and leave no other acceptable cause for the accident. Of course this is wrong. It requires the plaintiff to prove a civil case beyond a reasonable doubt, and to bring in enough for a directed verdict. There are few res ipsa cases in which all other possible inferences can be excluded."

■ *Collings v. Northwestern Hospital, supra*, which is relied on by *Hoffman* and *Miller, supra*, carefully and correctly states the rule with regard to the nonapplicability of res ipsa loquitur when other possible causes are present. In *Collings*, we stated:

" * * * When the injury might, *with equal probability*, have resulted from the acts of others as well as from the acts of defendant, proof of facts, other than that of injury, from which defendant's negligence can be inferred, must be made before the question can be submitted to the jury. Otherwise, the

verdict would be founded on mere speculation. * * * An inference of negligence based on an inferred fact *of which there is neither evidence nor predominating probability* cannot be safely made. * * *." (Emphasis supplied.) 202 Minn. 144, 277 N.W. 912.

■ In the instant matter, the jury was instructed that it could not infer defendant's negligence unless it first found that plaintiff suffered burns while a patient at defendant hospital. The jury could not have determined that plaintiff suffered burns if the injury could, with equal probability, have resulted from causes not within the control of defendant, since the plaintiff must prove his claim by a preponderance of the evidence. Thus, in this case, the inference of negligence was not based on an inferred fact, that plaintiff had been burned, of which there was no predominating probability. Rather, the jury first determined that the predominating probability was that plaintiff had suffered burns, and then proceeded to infer negligence under the res ipsa loquitur analysis.

■ As this court so aptly stated in *Hestbeck v. Hennepin County*, 297 Minn. 419, 424, 212 N.W.2d 361, 365 (1973):

" 'The thing or situation speaks for itself' is usually abbreviated by using the Latin phrase 'res ipsa loquitur.' It is merely another way of characterizing the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence. Applying this doctrine and instructing a jury concerning it in an appropriate case are designed to assist plaintiff in discharging his obligation to make out a prima facie case of negligence and to aid the jury in performing its factfinding function. Its effect is to place upon the physician and medical personnel, who have the advantage of knowledge of what was done and its significance—knowledge customarily denied the patient—, the burden of going forward with rebutting evidence to satisfactorily and convincingly explain away those facts and circumstances which otherwise may reasonably support an infer-

ence that someone was negligent. It is obvious that the stronger the inference of negligence raised by the circumstantial evidence, the more difficult it is to disprove."

It is within the province of the jury to find whether or not facts exist that will support the application of the res ipsa loquitur theory. In *Hector Const. Co. v. Butler,* 194 Minn. 310, 313, 260 N.W. 496, 498 (1935), we said:

"Since one of the facts, the presence of which must be established before *res ipsa loquitur* is applicable, was in dispute, it was for the jury to find the existence of this fact before *res ipsa loquitur* could be applied. If they found the existence of such fact, then they could apply the doctrine and would be justified in returning a verdict for plaintiff. * * * "

The order granting a new trial is vacated and judgment is to be entered in accordance with the jury's verdict.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.